# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

WILLIAM HAMILTON,

                              Plaintiff,

   v.                                               3:14-CV-118 (GTS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
SERGEI ADEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

On October 6, 2006, plaintiff "protectively filed"[1] an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning September 25, 2006. (Administrative Transcript ("T") at 55-56, 88-92).[2] The applications were denied initially on February 20, 2007. (T. 57-60). Plaintiff

---

[1] The term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. If a statement meeting the requirements of the regulations is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

[2] The actual DIB and SSI applications are at T. 88-92, but the "protective" filing date is not reflected therein. The protective filing date is reflected in the initial denial documents at (T. 55-56).

requested a hearing before Administrative Law Judge ("ALJ") which was held on April 29, 2009. (T. 20-54). On July 31, 2009, the ALJ found plaintiff was not disabled. (T. 4-15). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on October 2, 2009. (T. 1–3).

Plaintiff sought judicial review of the Commissioner's decision by filing an action in the Northern District of New York pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). *Hamilton v. Colvin*, No. 3:09-CV-1199 (FJS/VEB) (N.D.N.Y.). On March 12, 2013, the Honorable Frederick J. Scullin, Jr., adopted a Report-Recommendation by Magistrate Judge Victor Bianchini, and ordered reversal of the Commissioner's decision and a remand to the agency for further proceedings. (T. 359-83). The court ordered further development of the record concerning the severity of plaintiff's carpal tunnel syndrome; back, hip, knee, and ankle pain; and his diverticulitis. (T. 368-75). The court also ordered further consideration of plaintiff's credibility (T. 375-78), and a re-evaluation of plaintiff's non-exertional impairments and their effect upon his ability to perform substantial gainful activity (T. 378-80).

On remand, in an order dated April 12, 2013, the Appeals Council sent the case back to ALJ Koennecke for further consideration in accordance with Senior Judge Scullin's order.[3] (T. 384-87). ALJ Koennecke held a new hearing on September 16, 2013 at which plaintiff and a Vocational Expert ("VE") testified. (T. 316-38). On

---

[3] Plaintiff filed subsequent applications for DIB and SSI, dated May 2, 2011. In its April 12, 2013 Order, the Appeals Council noted that the plaintiff's subsequent applications were duplicative, and directed that the ALJ "associate" the claim files, offer plaintiff the opportunity for a hearing, and issue a new decision based on the "associated files." (T. 386).

2

November 8, 2013, ALJ Koennecke issued a decision, finding that plaintiff was not disabled. (T. 291-307). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 8, 2014.[4]

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

---

[4] The Appeals Council's decision does not appear in the transcript. However, the plaintiff's complaint states that the date of the Appeals Council action was January 8, 2014. (Complaint ¶ 3) (Dkt. No. 1). The parties do not question that such a decision exists, and the court will utilized the date as stated in the complaint.

3

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

4

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    THE ALJ'S DECISION

After reviewing the evidence, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: bilateral shoulder impingement; bilateral carpal tunnel syndrome; and recurrent hernias. (T. 295-97). The ALJ found that plaintiff's diverticulitis and his hip, knee, ankle, and back pain were either non-severe or not medically determinable. (T. 297-98). The ALJ also found that

5

plaintiff's obesity was not a severe impairment. (T. 298). At step three, the ALJ found that plaintiff did not have a listed impairment. (T. 298).

At step four, the ALJ determined that plaintiff had the RFC to lift and/or carry twenty pounds; stand for four hours at a time; and had no limitations for sitting. (T. 298-305). Plaintiff should avoid "repetitive" bending, and he is able to use his hands for up to one hour at a time for repetitive activity, but would need breaks every hour, and cannot reach overhead. (*Id.*) This RFC is consistent with "the ability to perform less than the full range of light work." (T. 298). The ALJ also found that plaintiff was unable to perform any of his past relevant work. (T. 305-306).

Because plaintiff could not perform the full range of light work, the ALJ consulted a VE who testified at the hearing. Based on the answer to the ALJ's hypothetical question, the VE indicated that plaintiff could perform the requirements of "representative"[5] occupations such as "ampoule sealer," "touch up screener/printed circuit board assembler," and "table worker." (T. 306-307, 328-38). The ALJ found that all of these jobs are sedentary, with a vocational preparation of 2, and do not require overhead work. (T. 307). There were 1,064 ampoule sealer jobs; 1,550 circuit board assembler jobs; and 2,546 table worker jobs in the national economy. (T. 307).

The VE testified to the regional numbers for each job at plaintiff's counsel's request, but in her decision, the ALJ stated that the regulations only require that the jobs plaintiff could perform exist in significant numbers in the "national economy." (T.

---

[5] The ALJ used the term "representative" in her decision. (T. 306). The VE did not use that term during her testimony.

6

307). The ALJ stated that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles ("DOT") pursuant to Social Security Ruling ("SSR") 00-4p. (*Id.*) The ALJ then found that plaintiff was not disabled based upon the above information. (*Id.*)

## IV. ISSUES IN CONTENTION

Plaintiff raises only one issue for this court's review. Plaintiff argues that the ALJ did not sustain her burden at step five of the sequential evaluation to show that there are a "significant number" of jobs that plaintiff can perform. (Pl.'s Br.) (Dkt. No. 14). Defendant argues that the Commissioner's decision is supported by substantial evidence and requests dismissal. For the following reasons, this court agrees with plaintiff, but will recommend remand for further proceedings.[6]

## V. FACTS

The Commissioner incorporated the facts as stated by the ALJ in her decision. (Def.'s Br. at 2) (Dkt. No. 15). The plaintiff briefly summarized the relevant facts in his brief. (Pl.'s Br. at 1-4). Plaintiff does not question the findings of the Commissioner regarding plaintiff's impairments or RFC evaluation. The issue in this case is limited to whether the ALJ carried her burden to show sufficient jobs that plaintiff could perform. Thus, this court will incorporate the facts as stated by both parties and the ALJ. Relevant details regarding the evidence are discussed below as necessary to address the issue raised by plaintiff.

---

[6] Plaintiff asks for reversal for calculation of benefits. As discussed below, the court does not agree that plaintiff is entitled to that relief.

## VI. VE/NUMBER OF JOBS

### A. Legal Standards

If a claimant is unable to perform a full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, then the ALJ may utilize the services of a vocational expert. 20 C.F.R. §§ 404.1566, 416.966. A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

If the ALJ utilizes a VE at the hearing, generally, the VE is questioned using a hypothetical question that incorporates plaintiff's limitations. Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion." *Dumas*, 712 F.2d at 1554. *See also Peatman v. Astrue*, No. 5:10-CV-307, 2012 WL 1758880, at *7 n.5 (D. Vt. May 16, 2012) (the hypothetical question posed to the VE must accurately portray the plaintiff's physical and mental impairments) (citations omitted); *Green v. Astrue*, No. 08 Civ. 8435, 2012 WL

8

1414294, at *18 (S.D.N.Y. April 24, 2012) (citing *Dumas,* 712 F.2d at 1553-54).

    B.    **Application**

In this case, there is ***no dispute*** over the hypothetical question or the VE's testimony. Plaintiff agrees that the VE is correct. However, plaintiff claims that the number of jobs to which the VE testified is not a "significant number" of jobs, and therefore, plaintiff is disabled. The VE found that there were 1,064 ampoule sealer jobs; 1,550 circuit board assembler jobs; and 2,546 table worker jobs in the national economy. (T. 307). However, when plaintiff's counsel asked for information regarding the number of jobs in the regional economy, the VE testified that there were three ampoule sealer jobs (T. 332); four circuit board assembler jobs (T. 335); and six table worker jobs. (T. 336).

Courts have held that a "significant number" of jobs is "fairly minimal." *Rosa v. Colvin*, No. 3:12-CV-170, 2013 WL 1292145, at *9 (N.D.N.Y. March 27, 2013) (citing *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)). Defendant argues that in *Bavaro v. Astrue*, the Second Circuit held that the Commissioner need only show "one" job existing in the national economy that plaintiff could perform. *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011). *Bavaro* does not support defendant's argument in this case. While it is true that the court in *Bavaro* held that the Commissioner need only show that plaintiff could perform one type of job, the court was not discussing the particular job existed in "significant numbers" in the national economy. *Id. See also Sullivan v. Astrue*, No. 08-CV-6355, 2009 WL 1347035, at *15 & n.15 (W.D.N.Y. May 13, 2009) (single job is sufficient if

9

it exists in "significant numbers").

Although the court in *Bavaro* did hold that the Commissioner need only show one job existing in the national economy, the court stated that "[a] vocational expert testified to the existence of such jobs at the national and regional level." *Id.* Thus, although the court was referring to one occupation (photo counter clerk), this one occupation existed in significant numbers in the regional and national economy. The court never mentioned how many of the photo counter clerk positions there were in the national and regional economy. *Id.* Apparently, the numbers were significant, notwithstanding "the [alleged] decline of the photofinishing industry." 413 F. App'x at 384. In this case, the VE listed three jobs that plaintiff could perform. Plaintiff does not question the number of jobs. Plaintiff argues that those three jobs do not exist in significant numbers in the regional or national economy.

Defendant argues that plaintiff is focusing upon the "regional" numbers and the Social Security regulations provide that the significant number of jobs may exist in the regional *or* national economy. 20 C.F.R. §§ 404.1566, 416.966. Defendant is correct in her statement of the regulations, but plaintiff is arguing that both the VE's regional ***and*** national numbers are not "significant." The court will therefore focus on the national numbers because the regional numbers are not significant.[7]

---

[7] Thirteen jobs (three ampoule sealer jobs; four circuit board assembler jobs; and six table worker jobs) in the entire region is not a significant number. However, the fact that the local numbers are not significant does not matter if the national numbers are significant. *Colon v. Comm'r of Soc. Sec.*, No. 6:00 CV 556, 2004 WL 1144059, at *8 (N.D.N.Y. Mar. 22, 2004) (ALJ may properly rely only on significant numbers of jobs available in the national economy). It does not matter whether work exists in the immediate area in which a plaintiff lives. *McCusker v. Comm'r of Soc. Sec.*, No. 1:13 CV 1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014). The court would note that there

Recently in *Koutrakos v. Colvin*, Magistrate Judge Joan Margolis discussed the "significant numbers issue" and reviewed the some of the case law discussing whether "significant numbers" existed. *Koutrakos v. Colvin*, No. 3:13-CV-1290, 2015 WL 1190100, at *20-22 (D. Conn. Mar. 16, 2015). Magistrate Judge Margolis first pointed out that "[n]either the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." *Id.* at *21. The court is generally guided by numbers that have been found "significant" in other cases. *Id.* (citing *Schadenfroh v. Colvin*, No. 09-CV-223, 2014 WL 1260123 (S.D. Ind. Mar. 27, 2014)). Significant numbers include 408 jobs in the regional economy and 98,008 jobs in the national economy; and 180 jobs in the regional economy and 40,027 jobs nationally. *Barbato v. Astrue*, No. 09-CV-6530, at *7 (W.D.N.Y. July 7, 2010) (citing *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1400 jobs was significant)[8] (citing cases); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in the local economy, 1600 in the state, and 80,000 in the national economy were significant); *Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1553-54 (2d Cir. 1983) (150 jobs in the local economy and 112,000 in the national economy)). In *Fox*, *supra*, the court found that 200 surveillance system monitor jobs in the Central New York Region were significant. *See also Roe v. Colvin*, No. 1:13-CV-1065, 2015 WL 729684, at *7

---

were no numbers discussed for the three jobs available in the state of New York.

[8] Although the court in *Lee* did not specify that it was referring to the "local" economy, the case that it cited for the proposition that 1350 jobs was "significant" was a case in which the number was referring to numbers in the local economy. 988 F.2d at 794 (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).

(N.D.N.Y. Feb. 19, 2015) (630 jobs locally and 44,000 nationally was significant); *McCusker*, 2014 WL 6610025, at *3 (100 jobs in the Capital Region; 2,250 in New York State, and 74,470 nationally was significant); *Gray v. Colvin*, No. 12-CV-6485, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (60 jobs regionally, but over 16,000 nationally was significant).

In *Koutrakos v. Colvin*, the court questioned whether 85 jobs in the state of Connecticut were a "sufficient number" of surveillance system monitor jobs. However, the VE in *Koutrakos* also testified that there were 1,296 information clerk jobs in Connecticut and 152,000 nationally, which was a significant number. 2015 WL 1190100, at *22 (citing inter alia *Durante v. Colvin*, No. 13-CV-1298, 2014 WL 4843684, at *5 (D. Conn. Sept. 29, 2014) (finding that 660 positions in the state of Connecticut is a significant number); *Dugan v. Soc. Sec. Admin. Comm'r*, 501 F. App'x 24, 25 (2d Cir. 2012) (noting VE's testimony that there were two jobs with a total of 600 positions in Vermont and 344,000 nationwide)). Because of the additional job with a more extensive number of positions in the state of Connecticut, the court in *Koutrakos* affirmed the Commissioner's determination and found that the VE had cited significant numbers of jobs that the plaintiff could perform.

In *Vining v. Astrue*, 720 F. Supp. 2d 126, 136 (D. Me. 2010), the court found that "assuming" that 30 jobs in the state of Maine is ***not*** a "significant" number in the region where plaintiff lives," 11,000 nationwide was a "significant number in several other regions of the country." However in *Leonard v. Heckler*, 582 F. Supp. 389, 391 (M.D. Pa 1983), the court held that 4,000 to 5,000 jobs nationwide was ***not*** a significant

12

number, given that it was "a minuscule fraction of the number of jobs existing in the national economy." The court in *Vining* estimated that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant.'" 720 F. Supp. 2d at 136 (citing inter alia *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in Iowa and 10,000 nationally was significant); *McGee v. Astrue*, No. 08-831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (150 jobs in Louisiana and 18,760 nationally was found significant)). In *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012), the court found that 135 regional jobs and 1,680 national jobs was not significant. The court specifically stated that "[a]lthough 1,680 jobs might seem a 'significant number' standing alone, distributing these jobs between several regions across the nation shows that it is not 'significant' after all."

None of the cases cited above, nor any cases that this court has found, hold that three occupations with a total for all three of 13 positions regionally and a total of 5,160 nationally are significant numbers, and in *Leonard*, the court in Pennsylvania specifically held that 4,000 to 5,000 jobs nationally is not a significant number.[9] Thus, the ALJ has not sufficiently shown that plaintiff can perform other work in the national economy.

VII. **NATURE OF REMAND**

    A. **Legal Standards**

Remand to the Commissioner for further development of the evidence is

---

[9] *See also Hoffman v. Astrue*, No. C09-5252, 2010 WL 1138340, at *15 (W.D. Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant) (citing *Johnson v. Chater*, 108 F.3d 178 at 180) (10,000 jobs in the national economy found sufficient)).

appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

**B.     Application**

This court has found that the ALJ's decision is not supported by substantial evidence and must now determine whether remand for additional proceedings or reversal with a remand for calculation of benefits is appropriate. Plaintiff argues that the court should remand for calculation of benefits because the ALJ erred at step five in determining that there were significant numbers of jobs that plaintiff could perform. Plaintiff argues that this case has been pending for eight years, with a court remand and two ALJ hearings. Plaintiff argues that the VE named only three specific job titles, and did not state that they were "representative."[10] Plaintiff concludes that the three job titles mentioned by the VE were the only jobs available that the plaintiff could perform. (Pl.'s Reply Br. at 3-4).

The court understands that the case has been pending for a long period of time. However, this court cannot make the assumption that plaintiff requests. While the VE testified that there were three job titles, there was no direct testimony that those three were the only jobs available that a person with plaintiff's restrictions could perform.

---

[10] As stated above, the ALJ used the term "representative" in her decision, but the VE did not use that term during her testimony. (T. 306) (ALJ's decision).

They could simply have been the only three jobs that the VE was prepared to discuss. Additionally, the VE never mentioned state-wide numbers for the three jobs that she did discuss. While the state-wide numbers also may be insufficient, this court cannot make that assumption. Thus, this court will recommend reversal of the Commissioner's decision and a remand to the agency for further administrative proceedings consistent with this report.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED**, and the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to determine whether there are significant numbers of jobs that plaintiff can perform in the local, regional, or national economy.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 8, 2015

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge